The opinion of the Court was delivered by
Bermudez, C. J.
This is a petitory action. The plaintiff alleges, in substance, that the defendants claim to own a certain lot and buildings tbereon, situate in the town of Floyd, and known as tbe courthouse, under a conveyance made thereof in 1872, in pursuance of an ordinance, of the local Police Jury; that the said property was donated in 1855, to the then Parish of Carroll, for its use, and benefit; that the pretended sale and purchase are nullities, for want of legislative sanction j that subsequent to said sale, tbe Parish of West Carroll was created, and embraces tbe said real estate, which has become its property. Tbe petition concludes with a prayer for the annulment of the defendants’title and a recognition of plaintiff’s rights of ownership to the lot in question.
Without denying the facts alleged, the defendants answered, averring that the plaintiff has no standing in Court; that the property was of such character that it could have been sold by the Police Jury, without legislative authority; that the sale had been ratified by a subsequent Police Jury, and by tbe legislature; that if tbe sale be a nullity, they are entitled to a repetition of tbe purchase price to be paid back before return of tbe property.
*930 There was judgment annulling the sale, recognizing ownership in the Parish of West Carroll to the property in question, and entitling the defendants to a return of the price of sale, with interest.
Prom the judgment thus rendered, the defendants have appealed. The plaintiff has asked no amendment of the judgment.
The record shows that, in. 1855, George 0. Wilson and S. C. Ployd donated the lot in question, to the Parish of Carroll, in “fee simple,n for Us use and benefit; that, subsequently, a courthouse wa's built upon it and was used as such; that the town of Ployd, in which said lot is situated, was then the parish seat; that in 1870, the parish seat having been removed by law to or near Providence, on the Mississippi, the courthouse at Ployd was abandoned; that it was so fast dilapidating and becoming the resort of town stock, that the Police Jury ordered it to be sold; that it was then apparently purchased by J. M. Gaddis, through whom defendants claim; that the sale was ratified by a succeeding Police Jury.
In 1877, the legislature created the Parish of West Carroll, within whose limits the property in question is found.
It is not pretended that the Police Jury was specially authorized by the legislature to sell the property, but it is contended that the legislature ratified the sale which was made, by giving it an indirect sanction, resulting from Section 13, of Act 24 of 1877, which is to the effect: that West Carroll is bound for a pro rata share of the debts of the old parish, except those due for building and repairing the courthouse and jail in the town of Providence.
Two questions are presented for solution in this controversy:
1. Whether the plaintiff has a standing in Court, to claim the real estate in dispute;
2. Whether the property was susceptible of a valid alienation by the Police Jury.
I.
It is evident that the legislature, when it adopted Act 24 of 1877, the title of which is “ to abolish the Parish of Carroll,” contemplated some fundamental modification of the political organization then in existence. The Parish of West Carroll was carved but of the territory of the Parish of Carroll, and what remained was named East Carroll. New officers were appointed for the first parish. Although none were appointed for the second named, it is clear that those previously in existence became functi offieio, the moment the Act went into operation, as officers of the Parish of Carroll, which had been blotted out, and at once became officers of the Parish of East Carroll, which succeeded it. The legislature thought it wise to dispense with new appointments.
*931 The Act. refers to two distinct and independent organizations, one actually, another virtually created. The old Parish of Carroll became defunct. It died away, but it was instantly replaced by the two Parishes of East and West Carroll; the former to be represented and governed by the officers, the laws and regulations in existence at the time the Act took effect.; the latter t.o be represented and governed in the manner provided for by the same Act.
Under the recognized rule that, on the division of a public corporation possessing corporate property into two separate new communities, each becomes entitled to hold in severalty the- public property which falls within its limits, the property in this case passed to the Parish of West Carroll. Dillon on Mun. Corp. 3d Ed. p. 215, 5 188, (128); 32 An. 624.
The rule is different where a new corporation is created, and the old one from which it is taken remains unchanged, preserving its original name.
The intention of the legislature no doubt was, that each new parish should consist of all the territory within the limits, as apportioned and fixed, and that each should own the corporate property included within its boundaries. The legislature made provision for the apportionment of the debt, but remained reticent as to the disposition of the corporate property.
Under the circumstances, the legislative intention announced may .be legitimately inferred. A different conclusion would be unreasonable, incongruous, abnormal and not practical.
We, therefore, conclude that the Parish of West Carroll has a standing in court to claim the property in dispute.
II.
We are next to consider whether the property was susceptible of a valid alienation by the Police Jury.
Parishes, like counties in other States, are involuntary political or civil divisions of the State, designed to aid in the administration of government, as State auxiliaries or functionaries, possessing no other powers than those delegated, ranking low down in the scale of corporate existence, and well distinguishable from municipal corporations XJroper, which are vested with more extensive powers and endowed with more important functions and a larger measure of corporate life. As a rule, they cannot acquire real estate, unless for public utility, and cannot dispose of the same, after it has been acquired and devoted to public service, without legislative authority. Dillon, 3d Ed., 25. They may, however, be the object of public and private bounty, in the absence of disabling or restraining Statutes.
*932 They do not acquire for themselves as a political organization. They acquire for the benefit of the public, of the people, particularly the local community, which is represented primarily by the State, and secondarily by them, but so far only as the State has delegated to them the power to do so. As State auxiliaries, they cannot dispose of public property, unless with the formal sanction of the State, and even then, in those cases only in which the State, violating no trust and no contract, and infringing the rights of no one, could herself legally act. Creatures, they are wholly dependant upon and controlled by their creator. They have no life, no attribute, no power, no rights, no obligation, but such as have been conferred or imposed upon them.
It is undeniable that the property in this case could have been validly donated and the donation accepted, as was done. The defendants cannot controvert this proposition without destroying their own title.
It would have been legitimate for the donors to have dedicated the property themselves, for a specific object, and in default of such dedication, it was competent for the parish to have devoted it to such public purpose as, in its judgment, it deemed proper and advantageous for the community.
An inspection of the act of donation shows that the donors did not dedicate the property for any particular object, but gave it in ‘‘fee simple to the parish, for its use and benefit.”
The donation, with that limitation, was accepted. Unrestricted as it was by any special disposition of the property by the owners for a public object, the parish, through its representatives, determined to use it for the purposes of a courthouse, which is a public building necessary in every community. Such a building was constructed upon the property, and was subsequently used according to its destination.
Upon the principle that the acceptance of a conditional donation constitutes a contract, the terms whereof are binding on the donee, a long line of authorities underlies the well established proposition that a municipal or political corporation has no implied or incidental authority to alienate or dispose of, for its own benefit, property dedicated to or held by it in trust, for the public use, and cannot extinguish the public uses of such property, which is not liable for the payment of corporate debts. Dillon, 3d Ed. § 650, and authorities in note; 30 An. 66 ; 10 Pet. 734; 7 Texas, 288.
How far the legislature has the power to confer authority to dispose of property held for such purposes, depends upon the nature and extent of the dedication. If full title is held to the ground, for public uses, without restriction, the legislature may doubtless direct and regulate the purposes for which the public may use it. If the grant be made for a specific purpose, the public acquiring merely an easement, the *933 donor retains an interest which deprives the legislature of the power to sanction a sale. Dillon, § 651.
In the case of Van Ness vs. Washington, 4 Pet. 232, in which the streets and public squares of the City of Washington had been granted by the original proprietors “for the use of the United States forever,’-’ it was held that those words conveyed an absolute unconditional fee simple, and that the original owners could not object to a sale, authorized by Congress, of such portions as were no longer useful for streets and squares. See also, 3 Lans. N. Y. 429; 45 N. Y. 234.
Had the property in this controversy been donated, without any restriction to its use, to a municipal corporation proper having the right to acquire private property, a different question might have been presented, as such an organization possesses the incidental or implied right to alienate or dispose of the property, real or personal, of a private nature, which it may own, as a natural person could, when not restrained by charter or statute. Whatever may be the right of those corporations, in such cases, the power could not be extended to instances of property acquired by dedication to public use generally, and devoted to some special purpose, for then the property becomes public property, and cannot be alienated withoutlegislativeauthority. Dillon, 3d Ed. $$ 574, 575, et seq., and notes.
The powers of municipal corporations proper being more extensive than those of counties or parishes, it has been held, that where property had been acquired by a city for a marlcet, and was constantly used for that purpose for forty years, the land was not thereby dedicated, but the market being abandoned, the land could be sold by the corporation. 18 Ohio, 563; Market houses are not classed among public things. 14 An. 875.
The only authority to which our attention has been called by the defendants, as militating against the principles before announced, concerning the attributes of parishes and the character of property owned by them, is that found in 10 An. 497. The case was one in which the United States had made, in 1823, an unconditional grant to the Parish of Ouachita of the land then in controversy, whichhadbeen previously used as a graveyard up to the year 1800, and which had not, since that last date, been dedicated expressly or by acquiescence to any public use. The Court held, that the temporary use of the land as a burial ground, which was abandoned twenty-three years previous to the donation, had not excluded it from commerce, and not exempted it from sale, and that inasmuch as it was not pretended that the property was essential to the existence or suitable administration of parochial government- and affairs, the judicial sale made of it, in 1827, under execu *934 tion to satisfy a judgment against tlie parish, was valid and transferred full title to the purchaser.
Without affirming the doctrine there announced, we will observe that the differences between the two cases are glaring. The land involved liad been donated unconditionally, had not been dedicated either by the donor or the donee'at the time of or since the donation; it was not out of commerce, it was not necessai-y or even suitable for parochial purposes. The property in the present instance was donated by the proprietors themselves for public use and benefit, in a manner which substantially amounts to a dedication to the i>ublic; it next was devoted by the donee to a public purpose, by the construction and use of a courthouse upon it; it was ah' initio stripped of the character of private property; it was put hors de commerce, and although not used for a public purpose since the removal of the parish seat to Providence, it has not the less continued to be property suitable and, in a contingency, essential for some parochial object. '
The land, by the removal of the parish seat and by the discontinuance of the use of the courthouse upon it, did not revert to the original grantors, 34 Penn. St. 133, and has not ceased, therefore, to belong to the public, to whom it was donated.
It continues to be held under the same title, whether used or not for a public purpose. It is insignificant that it is not used. It is sufficient that the right to use it exists in the public. 30 An. 04; 33 An. 020. " '
We fail to discover in the Act of 1877, the essential elements required to constitute a ratification of the sale by the legislature.
The consequence is, that as the sale was wholly unauthorized by the legislature, it is illegal, and that no title of ownership has passed by the averred purchase. The plaintiff is entitled to have the sale annulled and to recover the property under the primordial grant.
The action of the Police Jury, which ordered the sale, and that of the succeeding one which approved' it, were altogether ultra vires, and so, of no effect. 10 Pet. 734 ; 7 Texas, 283.
The appellants ask that the judgment of the lower court, awarding them the price of sale paid directly to the parish, be amended, so as to require payment of said sum by the parish to them, previous to entry upon the land. The appellants are entitled in equity to that relief.
It is, therefore, ordered and decreed, that the judgment appealed from be amended, by requiring payment by the Parish of West Carroll, to the defendants, of the sums therein mentioned, as a condition precedent to the recovery of the possession of the land by the parish, and that thus amended, said judgment be affirmed at the cost of appellee in this Court.